## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA,
## ATLANTA DIVISION

| | |
|---|---|
| EFREM LITWIN, on Behalf of Himself and All Others Similarly Situated, | ) ) ) ) Civil Action No. |
| | ) |
| | ) <u>CLASS ACTION</u> |
| | ) |
| Plaintiff, | ) **CLASS ACTION** |
| | ) **COMPLAINT FOR** |
| | ) **VIOLATIONS OF THE** |
| vs. | ) **FEDERAL SECURITIES** |
| | ) **LAWS** |
| | ) |
| NUMEREX CORP., STRATTON J. NICOLAIDES, TONY HOLCOMBE, SHERRIE G. MCAVOY, JERRY A. ROSE, ANDREW RYAN, ERIC SINGER, and BRIAN R. IGOE, | ) **JURY TRIAL DEMANDED** ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

Plaintiff Efrem Litwin ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.    This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Numerex Corp. ("Numerex" or the "Company") against Numerex and the members of Numerex's Board of Directors

(the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9 and to enjoin the vote on a proposed transaction, pursuant to which Numerex will be acquired by Sierra Wireless, Inc. ("Sierra"), through its direct wholly-owned subsidiary Wireless Acquisition Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On August 3, 2017, Numerex issued a press release announcing it had entered into an Agreement and Plan of Merger dated August 2, 2017 (the "Merger Agreement") to sell Numerex to Sierra.  Pursuant to the terms of the Merger Agreement, Numerex stockholders will receive 0.1800 of a Sierra common share for each share of Numerex Class A common stock they own (the "Merger Consideration"), valued at approximately $5.34 per share based on the closing price of Sierra common shares on August 2, 2017, the last trading day before the public announcement of the Merger Agreement.  The Proposed Transaction is valued at approximately $107 million.

3.      On September 18, 2017, Sierra filed a Form F-4 Registration Statement (the "Registration Statement"), containing a proxy statement of Numerex, with the SEC.  The Registration Statement, which recommends that

- 2 -

Numerex stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Numerex and Sierra's financial projections, relied upon by Numerex's financial advisor Deutsche Bank Securities Inc. ("Deutsche Bank") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Deutsche Bank; and (iii) the sale process leading to the Proposed Transaction, including the terms of the non-disclosure agreements ("NDAs") entered into by Numerex with counterparties. The failure to adequately disclose such material information constitutes a violation of the above-referenced sections of the Exchange Act, as Numerex stockholders need such information to cast a fully-informed vote in connection with the Proposed Transaction.

4.    In short, unless remedied, Numerex's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9

promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 as well as under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because a substantial portion of the actionable conduct took place in this District.

**THE PARTIES**

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Numerex.

9.     Defendant Numerex is a Pennsylvania corporation with its principal executive offices located at 400 Interstate North Parkway SE, Suite 1350, Atlanta, Georgia 30339.  Numerex is a provider of managed enterprise solutions enabling the Internet of Things ("IoT").  The Company's common stock is traded on the NASDAQ under the ticker symbol "NMRX."

10.    Defendant Stratton J. Nicolaides ("Nicolaides") is Chairman of the Board and has been a director of the Company since 1999.

11.    Defendant Tony Holcombe ("Holcombe") has been a director of the Company since 2011.

12.    Defendant Sherrie G. McAvoy ("McAvoy") has been a director of the Company since 2013.

13.    Defendant Jerry A. Rose ("Rose") has been a director of the Company since 2013.

14.    Defendant Andrew Ryan ("Ryan") has been a director of the Company since 1996.

15.    Defendant Eric Singer ("Singer") has been a director of the Company since 2016.

16.    Defendant Brian R. Igoe ("Igoe") has been a director of the Company since 2016.

17.    Defendants Nicolaides, Holcombe, McAvoy, Rose, Ryan, Singer, and Igoe are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18.    Sierra is a Canadian corporation with its principal executive offices located at 13811 Wireless Way, Richmond, British Columbia, Canada V6V 3A4. Sierra engages in building the IoT with intelligent wireless solutions in North America, Europe, and the Asia Pacific.  Sierra's common stock is traded on the NASDAQ under the ticker symbol "SWIR."

19.    Merger Sub is a Delaware corporation and a direct, wholly-owned subsidiary of Sierra.

## CLASS ACTION ALLEGATIONS

20.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Numerex common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21.    Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

22.    The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are

thousands of members in the Class. As of September 18, 2017, there were approximately 19,675,128 shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by Numerex or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

23.    Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)    Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)    Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

24.    Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

25.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

26.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Company Background and Strong Financial Outlook

27.     Numerex provides managed enterprise solutions enabling the IoT primarily in the United States. The Company offers a portfolio of managed end-to-end IoT solutions, including smart devices, network connectivity, and service applications that address the needs of various vertical markets and industrial customers. Numerex offers its technology and services through its integrated platforms, which are sold on a subscription basis. The Company's products and services are primarily sold to enterprise and government organizations, some of which have global distribution.  Numerex primarily serves the home security, public safety, oil and gas, manufacturing, and supply chain management markets

28.    On January 11, 2017, the Company announced the termination of then-Chief Executive Officer ("CEO"), Marc Zionts, and the appointment of Numerex's Chief Financial Officer ("CFO") Kenneth Gayron ("Gayron") as Interim CEO.    In the January 11, 2017 press release, Interim CEO and CFO Gayron commented on the Company's future, stating:

> I believe that the company's operational and financial performance will significantly improve as we focus our resources on our key product lines of security, certain industrial IoT solutions, and our robust IoT network and application services.    I look forward to working with [newly-appointed Chief Operating Officer] Kelly [Gay] and other members of our management team to execute our strategy with renewed energy and focus and to re-assert ourselves as a leader in the IoT space.

29.    On March 16, 2017, the Company announced a plan to create a more focused business model and a cost-cutting initiative as well as its fourth quarter and full year 2016 financial results.    In the press release, Interim CEO and CFO Gayron stated:

> As the new senior management team at Numerex, we moved rapidly in the fourth quarter of 2016 to execute a plan to create a more focused IoT company — delivering on both near-term profitability goals and investments in future growth drivers.    To achieve both objectives, we have and will continue to cut costs to make targeted investments in engineering and sales that will deliver-value added, differentiated products in key verticals.    A more focused, ROI-driven approach to serving the needs of our top customers should position Numerex for industry leading profitability and growth . . . .

30.     Then, on May 9, 2017, the Company reported its first quarter 2017 financial results and announced the positive impact of its new focused, cost-effective business model.  Specifically, Interim CEO and CFO Gayron stated:

> Numerex made strong progress in improving our business model in the first quarter of 2017 resulting in a sequential improvement in operating cash flow and Adjusted EBITDA.  Our more focused strategy resulted in significant advancement of product roadmap and development timelines in our key verticals, while, at the same time, reducing expenses by $4.6 million on an annualized basis versus the first quarter of 2016.  Additionally, we experienced stabilization in our subscriber base as customer churn decreased with the completion of the AT&T 2G sunset. Our sales pipeline continues to remain healthy and with new product releases planned this year, ***Numerex is poised for growth and margin expansion in the second half of 2017***.
> . . .

Emphasis added.

**The Proposed Transaction**

31.     On August 3, 2017, Numerex and Sierra issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> ATLANTA, Aug. 03, 2017 -- Numerex Corp. ("Numerex" or the "Company") (NASDAQ:NMRX), a leading provider of enterprise solutions enabling the Internet of Things, (IoT), and  Sierra Wireless, Inc. ("Sierra Wireless") (NASDAQ:SWIR) (TSX:SW), a leading provider of fully integrated device-to-cloud solutions for the IoT, have entered into a definitive merger agreement (the "Merger Agreement") under which Sierra Wireless will acquire Numerex in a stock-for-stock merger transaction (the "Transaction"). The equity value of the Transaction is approximately US$107 million based on Sierra Wireless' closing stock price on August 1, 2017 of US$29.65 per share, and represents a premium of 17.5% to Numerex's volume

weighted average share price for the 20 trading day period ending August 1, 2017.

Under the terms of the Merger Agreement, Numerex shareholders will receive a fixed exchange ratio of 0.1800 common shares of Sierra Wireless for each share of Numerex common stock. Upon completion of the Transaction, Numerex will become a subsidiary of Sierra Wireless and approximately 10% of the common shares of Sierra Wireless on a fully diluted basis will be held by Numerex shareholders. Concurrent with closing, Numerex's debt of approximately $20 million including fees shall be repaid with Sierra Wireless cash. The Transaction is expected to close by the end of 2017, subject to the receipt of Numerex shareholder approval and certain regulatory and government approvals, and satisfaction of other customary conditions.

"We believe that combining with Sierra Wireless provides us the opportunity to work with and take advantage of world-class talent and technology to improve our product offerings for our customers," commented Kenneth Gayron, Interim CEO and CFO of Numerex. "The transaction also provides our shareholders the opportunity to participate in the upside potential of the combined company."

"The acquisition of Numerex accelerates our IoT device-to-cloud strategy by adding an established customer base, significant sales capacity, proven managed solutions and recurring revenue scale," said Jason Cohenour, President and CEO of Sierra Wireless. "The combination of Sierra Wireless and Numerex will represent a powerful business and technology platform that will enable the company to drive a global leadership position in IoT services and solutions."

## Insiders' Interests in the Proposed Transaction

32.     Numerex insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Company's executive

officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and Numerex's public stockholders.

33.    Company insiders stand to reap substantial financial benefits for securing the deal with Sierra.  If they are terminated in connection with the Proposed Transaction, Numerex's named executive officers stand to receive substantial severance payments in the form of golden parachute compensation. The following table sets forth the golden parachute compensation the Company's named executive officers stand to receive:

| Name | Cash ($) (1) | Equity ($) (2) | Perquisites ($) | Other ($) | Total ($) |
|---|---|---|---|---|---|
| Kenneth Gayron | $330,000 | $260,671 | — | — | $590,671 |
| Kelly Gay | $330,000 | $106,950 | — | — | $436,950 |
| Shu Gan | $125,000 | $101,718 | — | — | $226,718 |

**The Registration Statement Contains Material Misstatements or Omissions**

34.    The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Numerex's stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

35.    Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Numerex and Sierra's financial projections, relied upon by Numerex's financial advisor Deutsche Bank in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Deutsche Bank; and (iii) the sale process leading to the Proposed Transaction, including the terms of the NDAs entered into by Numerex with counterparties.  Accordingly, Numerex stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Numerex and Sierra's Financial Projections***

36.    The Registration Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

37.    The Registration Statement fails to disclose material information relating to the Company's projections provided by Numerex's management and relied upon by Deutsche Bank for its analyses.

38.    For example, the Registration Statement sets forth:

Deutsche Bank performed a discounted cash flow analysis to determine a range of implied net present values per share of Numerex

> common stock. Deutsche Bank applied discount rates ranging from
> 12.0% to 14.1% to estimates of the future unlevered free cash flows of
> Numerex for the calendar years 2017 through 2021, and to a range of
> estimated terminal values for Numerex at the end of such period based
> upon the Numerex forecasts to determine a range of implied enterprise
> values for Numerex as of August 1, 2017. For purposes of its financial
> analyses, Deutsche Bank calculated unlevered free cash flow as
> (a) Adjusted EBITDA less, (b) stock based compensation expense
> less, (c) cash taxes, less (d) capital expenditures, less (e) change in net
> working capital.

Registration Statement at 50. The Registration Statement, however, fails to

disclose the Company's unlevered free cash flows for calendar years 2017 through

2021, or the line items used to calculate the unlevered free cash flows, including

stock based compensation expense, cash taxes, capital expenditures, and change in

net working capital.

39.    In addition, with respect to Numerex's projections, the Registration

Statement discloses non-GAAP metrics including EBITDA and Adjusted

EBITDA, but fails to provide line item projections for the metrics used to calculate

these non-GAAP measures or otherwise reconcile the non-GAAP projections to

GAAP. The omission of the aforementioned line item projections renders the non-

GAAP projections included in the Registration Statement materially misleading

and incomplete.

40.    Similarly, the Registration fails to disclose material information

relating to Sierra's projections relied upon by Deutsche Bank for its analyses.

41.     The Registration Statement states:

Deutsche Bank also performed a discounted cash flow analysis to determine a range of implied net present values per Sierra Wireless common share. Deutsche Bank applied discount rates ranging from 10.0% to 12.0% to estimates of the future unlevered free cash flows of Sierra Wireless for the calendar years 2017 through 2021, and to a range of estimated terminal values for Sierra Wireless at the end of such period based upon the Sierra Wireless forecasts to determine a range of implied enterprise values for Sierra Wireless as of August 1, 2017. For purposes of its financial analyses, Deutsche Bank calculated unlevered free cash flow as (a) Adjusted EBITDA less, (b) stock based compensation expense less, (c) cash taxes, less (d) capital expenditures, less (e) change in net working capital.

*Id.* However, the Registration Statement fails to disclose Sierra's unlevered free cash flows for calendar years 2017 through 2021, or the line items used to calculate unlevered free cash flows, including Adjusted EBITDA, stock based compensation expense, cash taxes, capital expenditures, and change in net working capital.

42.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Numerex Unaudited Prospective Financial Information;" and (ii) "Opinion of Numerex's Financial Advisor."

**Material Omissions Concerning Deutsche Bank's Financial Analyses**

43.     The Registration Statement describes Deutsche Bank's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Deutsche Bank's fairness opinion and analyses fails to

include key inputs and assumptions underlying these analyses. Without this information, as described below, Deutsche Bank's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Deutsche Bank's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Numerex's stockholders.

44.     For example, with respect to Deutsche Bank's *Numerex Standalone Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the unlevered free cash flows for calendar years 2017 through 2021 utilized by Deutsche Bank in this analysis and the constituent line items used to calculate the Company's unlevered free cash flows, as discussed above; (ii) the inputs used to derive the range of discount rates of 12.0% to 14.1%; (iii) the range of illustrative terminal values for the Company; (iv) the amount of cash (net of debt) utilized by Deutsche Bank in this analysis; and (v) Deutsche Bank's basis for applying perpetuity growth rates ranging from 3.0% to 5.0%.

45.     In addition, with respect to Deutsche Bank's *Relative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the unlevered free cash flows for calendar years 2017 through 2021 utilized by Deutsche Bank in

this analysis and the constituent line items used to calculate Sierra's unlevered free cash flows, as discussed above; (ii) the inputs used to derive the range of discount rates of 10.0% to 12.0%; (iii) the range of illustrative terminal values for Sierra; (iv) the amount of cash (net of debt) utilized by Deutsche Bank in this analysis; and (v) Deutsche Bank's basis for applying perpetuity growth rates ranging from 3.0% to 4.0%.

46.    The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Opinion of Numerex's Financial Advisor;" and (ii) "Numerex Unaudited Prospective Financial Information."

47.    Without such undisclosed information, Numerex stockholders cannot evaluate for themselves whether the financial analyses performed by Deutsche Bank were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Deutsche Bank's opinion and analyses should factor into their voting decision in connection with the Proposed Transaction.

*Material Omissions Relating to the Sale Process*

48.    The Registration Statement also fails to disclose or misstates material information relating to the sale process leading to the Proposed Transaction.

49.    The Registration Statement fails to disclose the terms of the NDAs Numerex entered into with counterparties during the sale process.  Critically, the Recommendation Statement fails to expressly indicate whether the NDAs Numerex entered into with Party A, Party B, Party C and Party D are still in effect and/or contain "don't-ask-don't-waive" ("DADW") standstill provisions that are presently precluding each and every one of these  parties from making a topping bid for the Company.

50.    The disclosure of the terms of the standstill provisions is crucial to Numerex stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

51.    Further, according to the Registration Statement, on May 23, 2017, Sierra's financial advisor "provided an update to Deutsche Bank with regard to due diligence findings and consequently, valuation concerns that would result in Sierra Wireless no longer being able to agree to the exchange ratio indicated in the non-binding offer letter signed on April 24, 2017."  Registration Statement at 37.  The Registration Statement however fails to disclose any details regarding the due

diligence findings and valuation concerns that caused Sierra Wireless to lower the exchange ratio.

52.     Defendants' failure to provide Numerex stockholders with the foregoing material information renders the statements in the "Background of the Merger" section of the Registration Statement false and/or materially misleading and constitutes a violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

53.     Plaintiff repeats all previous allegations as if set forth in full.

54.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

55.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.   The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the sales process for the Company, the financial analyses performed by the Company's financial advisor, and the actual intrinsic standalone value of the Company.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

56.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

57.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

58.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

59.     Plaintiff repeats all previous allegations as if set forth in full.

60.     The Individual Defendants acted as controlling persons of Numerex within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers and/or directors of Numerex, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and

dissemination of the various statements which Plaintiff contends are false and misleading.

61.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.    The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

63.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement

purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

64.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Numerex's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Numerex, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Numerex stockholders;

C.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

//

//

//

//

//

Dated:  October 4, 2017

*/s/ Michael A. Rogovin*
Michael A. Rogovin
Georgia Bar No. 780075
WEISSLAW LLP
476 Hardendorf Ave. NE
Atlanta, GA 30307
Tel: (212) 682-3025
Fax: (212) 682-3010
mrogovin@weisslawllp.com

WEISSLAW LLP
Richard A. Acocelli
Kelly C. Keenan
Alexandra E. Eisig
1500 Broadway, 16th Floor
New York, NY 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*